**Henderson v. Biwojno**

C.P. of Allegheny County, no. GD98-6733.

*Patrick J. Loughren,* for plaintiff.
*David B. White,* for defendant Biwojno.

*Steven M. Houghton,* for defendant Presbyterian University Hospital.

*Giles J. Gaca,* for defendants Avolio and Cardiopulmonary-Renal Associates.

*David R. Johnson,* for Keystone.

WETTICK, *J.,* September 26, 2000—The claim of a non-party HMO (Keystone Health Plan) that its evaluations of the medical care that plaintiff received are protected from discovery by the Peer Review Protection Act (63 P.S. §425.1 et seq.) is the subject of this opinion and order of court.

This is a medical malpractice action brought by a plaintiff who suffered permanent heart damage. Plaintiff was receiving health benefits from her employer through Keystone Health Plan.[1] Plaintiff selected from Keystone's list of participating physicians Cardiopulmonary-Renal Associates to be her primary care physician group. Dr. Guy Avolio was employed by Cardiopulmonary-Renal Associates.

In this lawsuit, plaintiff has raised claims against several medical providers, including Dr. Avolio. According to plaintiff's complaint, plaintiff was treated by Dr. Avolio for a two-month period for complaints of chills, sweating, headaches, shortness of breath, etc. Plaintiff alleges

---

1. Keystone is an Independent Practice Association HMO (IPA-model HMO), meaning that it provides medical services to its subscribers through independent health contractors. Keystone, in other words, does not directly provide medical services through its own employees or through medical facilities that it operates. See generally, *McClelland v. Health Maintenance Organization of Pennsylvania,* 442 Pa. Super. 504, 660 A.2d 97, 100-101 (1995), *aff'd per curiam,* 546 Pa. 463, 686 A.2d 801 (1996).

that throughout this period she was suffering from an infection that went undetected and untreated (and which led to her permanent heart damage) as a result of Dr. Avolio's negligence.

After plaintiff had been correctly diagnosed and treated by other health care providers, plaintiff wrote a four-page letter dated December 8, 1996 to Keystone complaining about the treatment provided by Dr. Avolio. She concluded her letter by requesting that the situation be looked into and recorded.

Upon receipt of this letter, Keystone requested plaintiff's medical records from her treating physicians. Once they were received, Keystone arranged for two physicians to review the records and provide comments to Keystone on the quality of care provided by Dr. Avolio.

On February 7, 1997, Keystone sent plaintiff a letter which stated that "your information was referred to clinical quality improvement for review. As a health care plan, we are required to analyze complaints made against our network providers to determine if quality problems exist."

Plaintiff seeks to obtain the evaluations of the care furnished by Dr. Avolio through a deposition of an employee of Keystone who was involved in the quality assurance review. Keystone contends that this information is protected from discovery by the Pennsylvania Peer Review Protection Act. Keystone relies on section 425.4 which provides that: "The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee."

In order for this section to apply, (1) the evaluation must constitute a proceeding or record of a review committee and (2) the discovery must be sought in connection with a civil action against a professional health care provider arising out of matters which are the subject of the evaluation and review of the committee.

The second requirement is met. A physician is a professional health care provider as defined in section 425.2 of the Peer Review Protection Act. Consequently, this is a civil action against a professional healthcare provider (Dr. Avolio) arising out of the matters which were the subject of the evaluation and review.

I next consider the first requirement. A "review organization" is defined by section 425.2 as "any committee engaging in peer review." "Peer review" is defined in section 425.2 as "the procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other health care providers."

While Keystone arranged for professional health care providers to conduct the evaluation of the quality and efficiency of services performed by Dr. Avolio, this was an evaluation by Keystone. Consequently, the controlling issue is whether an evaluation by Keystone is an evaluation by a professional health care provider.

The term "professional health care provider" is defined in section 425.2 as follows:

*"Professional health care provider"* means:

"(1) individuals or organizations who are approved, licensed or otherwise regulated to practice or operate in the health care field under the laws of the Commonwealth,

including, but not limited to, the following individuals or organizations:

"(i) a physician;

"(ii) a dentist;

"(iii) a podiatrist;

"(iv) a chiropractor;

"(v) an optometrist;

"(vi) a psychologist;

"(vii) a pharmacist;

"(viii) a registered or practical nurse;

"(ix) a physical therapist;

"(x) an administrator of a hospital, nursing or convalescent home or other health care facility; or

"(xi) a corporation or other organization operating a hospital, nursing or convalescent home or other health care facility."

An IPA-model HMO does not come within any of the 11 individuals or organizations described in the definition. Consequently, Keystone must rely on the following provision: "including, but not limited to, the following individuals and organizations."

The issue of whether an IPA-model HMO is a professional health care provider was addressed by the Superior Court in *McClelland v. Health Maintenance Organization of Pennsylvania, supra,* 442 Pa. Super. 504, 660 A.2d 97 (1995). In that case, the estate of the deceased patient commenced a medical malpractice action against a physician chosen from an HMO list (Dr. Hempsey) based on his failure to diagnose or treat a malignant melanoma. The estate instituted a second malpractice action against the HMO based, inter alia, on allegations of a failure to select and retain only competent physi-

cians and a failure to formulate, adopt, and enforce adequate rules and policies to ensure quality care for its subscribers.

The plaintiffs sought production of certain documents, including writings relating to the care and treatment provided by Dr. Hempsey to his HMO primary care patients. The trial judge entered an order sustaining the HMO's objections to requests for production of documents on the ground that the requested documents were protected by the Peer Review Protection Act. On appeal, the Superior Court reversed. The court ruled that IPA-model HMOs are not professional health care providers. Consequently, the Peer Review Protection Act does not preclude discovery of peer review material in an action against an IPA-model HMO because section 425.4 protects only records sought in a civil action "against a professional health care provider." 63 P.S. §425.4.

The ruling of the Superior Court was affirmed by an equally divided court in *McClelland v. Health Maintenance Organization of Pennsylvania, supra,* 546 Pa. 463, 686 A.2d 801 (1996). The opinion of Justice Newman in support of affirmance stated that the resolution of the question of whether the Peer Review Protection Act's confidentiality provision (section 425.4) applies will be determined by the court's interpretation of section 425.2's definition of "professional health care provider." She found the term to be ambiguous because of the language "including, but not limited to" the 11 individuals or organizations described in the definition. She applied the "widely accepted" principle that "general expressions such as 'including, but not limited to' that precede a specific list of included items should not be construed in

their widest context, but apply only to persons or things of the same general kind or class as those specifically mentioned in the list of examples." *Id.* at 472, 686 A.2d at 805. (citations omitted) Since this list includes only immediate or direct health care providers and administrators of medical facilities and since an IPA-model HMO does not come within either category, she concluded that the legislature did not intend for IPA-model HMOs to be covered by the confidentiality provisions of the Peer Review Protection Act.

In an opinion in support of reversal, Justice Zappala agreed with the analysis of the opinion in support of affirmance that restricted the definition of health care providers to immediate or direct health care providers and organizations operating medical facilities. He looked to the case law which holds that IPA-model HMOs have the same duties as hospitals to select and retain competent physicians. He concluded that if hospitals and IPA-model HMOs are sufficiently similar to impose on both a duty to select and retain competent physicians, then IPA-model HMOs merit the same protection as is afforded to hospitals.

Justice Nigro also filed an opinion in support of reversal. He agreed with the authors of the other opinions that a review committee's records are not discoverable in a civil action against an IPA-model HMO unless IPA-model HMOs are professional health care providers. He concluded that a statutory mandate under the Health Maintenance Organization Act that HMOs provide or arrange for patient care (40 P.S. §1554(b)) puts HMOs in the same class as administrators of health care facilities and organizations operating health care facilities which also provide or arrange for patient care. He criti-

cized the opinion in support of affirmance for ignoring the fact that HMOs dictate the care provided in the health care facilities and prescribe the tests patients receive, the doctors patients see, and the time patients stay in health care facilities.

In the present case, Keystone contends that the *McClelland* rulings have little to do with this litigation. In *McClelland,* the courts were addressing the issue of whether a civil action against an HMO constitutes a civil action "against a health care provider" pursuant to section 425.4. In the present case, on the other hand, plaintiff has sued only immediate or direct health care providers. Thus, this case is clearly a civil action against a professional health care provider.

The difficulty with plaintiff's argument is that, as I have discussed at pages 325-26 in this opinion, in a civil action against a health care provider section 425.4 protects only evaluations conducted by a review committee; section 425.2 defines a "review organization" as a committee engaged in peer review; and section 425.2 defines "peer review" as the procedure for evaluation by professional health care providers. The opinion of the Superior Court in *McClelland* and the three opinions authored by Justices Newman, Zappala, and Nigro were construing the term "professional health care provider." I am construing the same term in this case. Consequently, these opinions govern this case.

Also, there would be no reason why the legislature would have intended to allow discovery of HMO review committee materials if the plaintiff included the HMO as a defendant in a medical malpractice action, but protected this information if the HMO was not included. A

construction of the Peer Review Protection Act in this fashion would encourage lawyers to include an HMO as a defendant in situations where a lawsuit against the treating physicians would provide an adequate remedy.

The ruling of the Superior Court in *McClelland* that IPA-model HMOs are not professional health care providers continues to be the controlling authority. Consequently, the Peer Review Protection Act does not apply.[2]

Keystone also relies on the Quality Health Care Accountability and Protection Act, 40 P.S. §991.2101 et seq. (Act 68). Under 40 P.S. §991.2121(a), managed care plans are required to adopt and maintain credentialing standards for health care providers. Under this subsection, the credentialing process shall include written criteria and procedures for initial enrollment, renewal, restrictions, and termination of credentials for health care providers. Under 40 P.S. §991.2121(d), a managed health care plan shall disclose relevant credentialing criteria and procedures to health care providers that apply to participate or that are participating in the plan's provider network and shall also disclose relevant credentialing criteria and procedures pursuant to a court order or a rule. "Any individual providing information during the credentialing process of the managed care plan shall have the protections set forth in . . . the 'Peer Review Protection Act.' "

For at least two reasons, the above-quoted provision does not support Keystone's position that the informa-

---

2. Keystone notes that the definition of "review organization" in section 425.2 includes a "health insurance review committee." This portion of the definition may have relevance to HMO models other than an IPA-model HMO and to the immunity from liability provisions of the Peer Review Act, 63 P.S. §425.3.

tion which plaintiff seeks is protected by the Peer Review Protection Act. First, it refers only to any individual providing information. Consequently, its purpose is to extend the immunity from liability provisions of the Peer Review Protection Act (63 P.S. §425.3) to persons who provide this information.

Second, the documents that are being sought do not involve information provided during the credentialing process. Under 40 P.S. §991.2141, a managed care plan is required to establish and maintain an internal complaint process by which an enrollee can file a complaint regarding a participating health care provider. No provisions of the legislation addressing the internal complaint process refer to the Peer Review Protection Act.

For these reasons, I enter the following order of court:

## ORDER

On September 26, 2000, it is hereby ordered that the motion of Keystone Health Plan to quash subpoena to attend and testify is denied.